UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SUZETTE HENDRICKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:08-CV-1836 (CEJ) |
| | ) |
| CITY OF BELLA VILLA, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion for summary judgment. Plaintiff opposes the motion and the issues have been fully briefed.

Plaintiff Suzette Hendricks brings this action under 42 U.S.C. § 1983, claiming violation of her constitutional rights during her arrest. Plaintiff also asserts state law claims of assault and battery.[1] Plaintiff seeks an unspecified amount of compensatory and punitive damages. Defendants are the City of Bella Villa and Officer Nicholas Nazzoli, the officer who arrested plaintiff.

I.  Background

At around noon on June 27, 2005, plaintiff Suzette Hendricks was driving her vehicle through the City of Bella Villa, Missouri, on her way to her home in Florissant. Her five year old son, Samuel, was in the backseat. Plaintiff testified that she was unfamiliar with the City of Bella Villa and had not been aware that she had passed through it on her drive.

---

[1]In her memorandum in opposition to defendants' motion, plaintiff states that she will not pursue her claim in Count VII for intentional infliction of emotional distress. Therefore, summary judgment on Count VII of the complaint will be granted in favor of defendants.

Officer Nicholas Nazzoli, then an officer with the Bella Villa Police Department,[2] was on patrol and noticed that plaintiff's vehicle had an expired license plate. Officer Nazzoli was dressed in a blue police uniform and driving a black Bella Villa police vehicle. Officer Nazzoli's patrol car did not have a light bar on the exterior of the car. Instead, the lights in Officer Nazzoli's car were above the dashboard on the inside of the vehicle. The vehicle was marked on its sides with the name of the Bella Villa Police Department.[3]

Plaintiff pulled her vehicle over when she noticed the flashing lights. She testified in her deposition that she believed that an emergency vehicle was a couple of cars behind her and needed to pass. When Officer Nazzoli's car pulled up behind her, she realized that the flashing lights were coming from within that car. She was unfamiliar with police vehicles initiating traffic stops when they did not have a light bar on the exterior of the vehicle. Plaintiff testified that she could not see any markings on the vehicle identifying itself as an official police vehicle. Plaintiff testified that she knew the vehicle did not look like a St. Louis County Police Department vehicle. She also testified that, to her knowledge, police officers in the county did not wear blue uniforms, such as Officer Nazzoli was wearing. Thus, when Officer Nazzoli approached her car, plaintiff testified that she feared he was impersonating a police officer in an attempt to kidnap and rape her.[4] Plaintiff quickly called her husband on her cell phone

---

[2]Officer Nazzoli is currently an officer with the St. Louis County Police Department and no longer works for the City of Bella Villa.

[3]Officer Nazzoli's police car was also equipped with a video recorder which recorded the incident in question. The video is activated when the lights on the vehicle are activated. Officer Nazzoli was also wearing a microphone, which he activated as he approached the plaintiff's vehicle. The parties do not dispute that the video and audio recordings are authentic.

[4]Plaintiff also testified that Officer Nazzoli's demeanor solidified her fear that he was not a real police officer. Plaintiff claims that Officer Nazzoli was immediately

and conveyed her fears to him. She was still talking to her husband as Officer Nazzoli arrived at her door.

Officer Nazzoli approached the vehicle and asked for plaintiff's driver's license and insurance. He also told plaintiff to roll down her window. Plaintiff asked Officer Nazzoli why she was being stopped. Instead of answering plaintiff's question, Officer Nazzoli asked plaintiff to give him her phone. Plaintiff refused and told Officer Nazzoli that she was talking to her husband. Officer Nazzoli again demanded that plaintiff get off the phone. During this exchange, plaintiff can be overheard on the audio recording giving Officer Nazzoli's name to her husband. Officer Nazzoli began knocking on the window and repeating his demand that plaintiff stop talking on the phone.

Plaintiff asked Officer Nazzoli for "proper identification." Officer Nazzoli pointed to the badge he was wearing on his uniform, but did not provide plaintiff with his police identification card. Plaintiff told Officer Nazzoli that she did not feel safe and felt uncomfortable. Officer Nazzoli warned plaintiff that he would not ask her for her identification again. Shortly thereafter, Officer Nazzoli reached through the window to unlock and open the door to plaintiff's car. Officer Nazzoli ordered plaintiff out of the car and threatened to stun her with his Taser if she refused. Plaintiff stayed in the vehicle and Officer Nazzoli pulled her out. Plaintiff was screaming and her son was crying. Officer Nazzoli handcuffed plaintiff and led her to the passenger side of his police car. Plaintiff's son, Samuel, was left unattended in the vehicle, with the driver's side door open. Samuel soon ran out of the car towards his mother.[5]

---

disrespectful and agitated, even before he began speaking to plaintiff. Plaintiff also testified that she was concerned by Officer Nazzoli's refusal to tell plaintiff why she had been pulled over. In plaintiff's past experiences with law enforcement, she described the officers as peaceful, calm and informative.

[5]The rest of the incident took place at the side of Officer Nazzoli's car and was not recorded by the video camera mounted to the front of the car. Officer Nazzoli's

−3−

Officer Nazzoli ordered plaintiff to sit in the backseat of his patrol car, but plaintiff refused to get in. Plaintiff testified that she still believed Officer Nazzoli was impersonating an officer and that, if she got inside the patrol car leaving her son outside, she and her son would be in danger. Officer Nazzoli testified that plaintiff kicked him during his struggle to get her inside the vehicle. Plaintiff denies kicking Officer Nazzoli. Officer Nazzoli continued to push plaintiff against the side of the car, trying to push her into the backseat. Plaintiff stated that she didn't understand what was going on, and Officer Nazzoli replied that he would explain it to her after she got into the car. Plaintiff demanded that Officer Nazzoli "explain it now." Officer Nazzoli quickly replied, "No, I won't." Officer Nazzoli again ordered plaintiff to get into the vehicle and warned her that she was about to be tased. Plaintiff refused to enter the vehicle and Officer Nazzoli shot the Taser dart into plaintiff's back. Several seconds later, Officer Nazzoli shot a second dart into plaintiff's back. At some point after plaintiff had been tasered, an officer from the St. Louis County Police Department arrived on the scene.

After she was tasered, plaintiff was put in the back of Officer Nazzoli's car. Officer Nazzoli and plaintiff had the following exchange[6]:

| | |
|---|---|
| Nazzoli: | I don't understand why you're fighting with me |
| Hendricks: | I don't understand. I just didn't understand. |
| Nazzoli: | Okay, give me your ID. |
| Hendricks: | Because you know… (inaudible)…there are so many people that impersonate officers. I was afraid. I was just afraid. |
| Nazzoli: | Okay, I'm in a marked police car, in full uniform. |
| Hendricks: | Please sir. I didn't see that. I just saw the black with the things on the side. |

---

microphone continued to record audio.

[6]Plaintiff submitted an unofficial transcript of the audio recording, which the Court has compared to the actual recording. The portions of the recording quoted by the Court are clearly audible on the actual recording and do not appear to be in dispute by the parties.

Officer Nazzoli testified that he had been unaware, until this conversation, that plaintiff did not believe he was a real police officer.

Chief Locke of the Bella Villa Police Department arrived at the scene after plaintiff had been tased. Plaintiff claims that Chief Locke chuckled at the sight of plaintiff sitting in the patrol car with the Taser darts sticking in her back. Paramedics also arrived on the scene, but Officer Nazzoli testified that they refused to take the darts out of plaintiff's back. Officer Nazzoli subsequently pulled the darts out. Plaintiff testified that it felt "horrific, like fish hooks coming out of your back."

Officer Nazzoli drove plaintiff and Samuel to the police station. Plaintiff claims that she was handcuffed to the desk while Officer Nazzoli filled out paperwork. Chief Locke was also present at the police station. Plaintiff testified that Officer Nazzoli continued to act aggressively and forceful towards plaintiff. Plaintiff claims that Officer Nazzoli told plaintiff she had one hour to post bond. A friend of plaintiff's later posted bond and plaintiff was allowed to leave.

Plaintiff went to the emergency room later that day, in response to violent shaking that she was experiencing. She was told that the shaking was her body's response to the tasing. Plaintiff testified that she continued to experiencing shaking throughout the next several months. She also experienced bruising and soreness from the incident.

II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. <u>Agristor Leasing v. Farrow</u>, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corporation v. Citrate</u>, 477 U.S. 317, 322 (1986).

III. Discussion

Defendant is moving for summary judgment on all of plaintiff's claims: (1) an excessive use of force claim under 42 U.S.C. § 1983 against Officer Nazzoli; (2) municipal liability claims against the City under § 1983; and (3) assault and battery claims against Officer Nazzoli.

A. <u>Claims against Officer Nazzoli</u>

In Count I of the complaint, plaintiff alleges that Officer Nazzoli used excessive force against plaintiff during the traffic stop. Defendants contend that summary judgment is appropriate on this claim for two reasons. First, defendants claim that the

use of force was objectively unreasonable under the facts and circumstances surrounding the traffic stop and arrest. Second, defendants claim that Officer Nazzoli is protected by qualified immunity.

Courts "analyze a claim that police employed excessive force during an arrest under the Fourth Amendment standard of 'objective reasonableness.'" Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006). "The reasonableness of a particular use of force depends on the circumstances of each case, including the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The Court's analysis must allow "for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 396-97.

The Court finds that there is a genuine issue of material fact with respect to plaintiff's claim of excessive force. First, Officer Nazzoli was initiating a traffic stop because plaintiff's vehicle had expired plates, a minor traffic offense. Second, the undisputed facts fail to show that plaintiff could have reasonably been perceived as a threat to Officer Nazzoli or to others. Although plaintiff did refuse to comply with some of Officer Nazzoil's demands, plaintiff made it clear throughout the entire incident that her refusal was due to her concern for her safety and the safety of her son. She made reasonable requests to Officer Nazzoli for "proper identification" or for Officer Nazzoli to call another police officer to the scene. Officer Nazzoli claims that he does not recall

hearing plaintiff explain some of her concerns. However, for purposes of this motion, the Court must assume that Officer Nazzoli was able to hear plaintiff---especially when Officer Nazzoli is heard on the audio recording responding to several of plaintiff's comments. Assuming Officer Nazzoli heard plaintiff express her fears, it would have been unreasonable for him to construe plaintiff's refusal to get off of the phone, or her subsequent refusal to get into his car, as warranting the use of the Taser gun. The Court does not believe that the repeated use of a Taser is an objectively reasonable amount of force in a situation where a suspect is handcuffed, is believed to have committed an minor traffic offense, is displaying no signs of aggression, and is refusing to comply with orders only because of her expressed fears for her safety.

Defendants also argue that Officer Nazzoli is protected by the doctrine of qualified immunity. "The purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting our of fear for their own personal financial well being." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002). Courts "employ a two-step process when considering an officer's claim of qualified immunity." Moore v. Indehar, 514 F.3d 756, 759 (8th Cir. 2008). First, the court determines "whether the officer's conduct violated a constitutional right." Id. If so, the analysis turns on "whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." Vaughn v. Greene Co., 438 F.3d 845, 850 (8th Cir. 2006).

The Court has already determined that, when viewing the evidence in the light most favorable to plaintiffs, Officer Nazzoli's conduct violated plaintiff's constitutional right to be free from the use of excessive force. Therefore, the Court turns to the second step in the qualified immunity analysis and examines whether a reasonable

official in Officer Nazzoli's position would understand that his conduct violated that right.

In Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir. 2009), the Eighth Circuit found that, as of October 2005, "the law was sufficiently clear to inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." The facts of this case are similar to those in Brown. Like the plaintiff in Brown, plaintiff here was a nonviolent misdemeanant, who showed no intentions of fleeing the scene. In handcuffs, she posed little threat to anyone's safety. Also, as in Brown, plaintiff's noncompliance was a direct result of her concern for her safety. Plaintiff was concerned that Officer Nazzoli was impersonating a police officer, and she repeatedly expressed those concerns to Officer Nazzoli, both before and after being tased. Officer Nazzoli did nothing to calm plaintiff's fears, and his hostile response only increased plaintiff's concerns. Accepting plaintiff's version of the events as true, the law was sufficiently clear to a reasonable officer that it would have been unlawful to taser plaintiff in this situation. Defendants' motion for summary judgment is denied as to Count I of the complaint.

Plaintiff's remaining claims against Officer Nazzoli are for assault and battery. A law enforcement officer making an arrest is "answerable in damages as for assault and battery only when…he uses more force than is reasonably necessary." Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. App. E.D. 1987). The Court has already determined that a genuine issue of material fact exists as to whether the amount of force used by Officer Nazzoli was reasonable. However, even if it was unreasonable,

Officer Nazzoli may still be protected from liability for assault and battery under the doctrine of official immunity. Official immunity protects police officers "for negligent acts that are related to discretionary functions." Blue v. Harrah's North Kansas City, 170 S.W.3d 466, 479 (Mo. App. W.D. 2005). "Deciding whether or not to arrest someone is a matter of discretion." Id. However, "official immunity does not apply to discretionary acts done in bad faith or with malice." Id.

Bad faith "embraces more than bad judgment or negligence." Id. Instead, it "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. "A defendant acts with malice when he wantonly[7] does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another."

Assuming that Officer Nazzoli knew that plaintiff did not believe he was a real police officer and was genuinely concerned for her safety, official immunity would not protect him from his use of force against plaintiff. Based on plaintiff's allegations, a jury could find that the use of the Taser gun under these circumstances was a discretionary act done in bad faith or with malice. Summary judgment on plaintiff's assault and battery claims against Officer Nazzoli in Counts V and VI will be denied.

B.  **Claims against City of Bella Villa**

In Count II of the complaint, directed toward the City of Bella Villa, plaintiff alleges that the policies, customs and practices of the City of Bella Villa caused the deprivation of plaintiff's rights. Specifically, plaintiff claims that it was the policy and practice of the Bella Villa Police Department to employ the use of Taser guns without

---

[7] "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id.

regard to whether the use was reasonable or necessary. Plaintiff also argues, in her response in opposition to summary judgment, that the lack of an official written policy on the use of Taser guns helped cause the deprivation of her rights.

A municipality "may be held liable under section 1983 . . . if one of its customs or policies caused the violation of plaintiff's rights." Davison v. City of Minneapolis, 490 F.3d 648, 659 (8th Cir. 2007). The denial of summary judgment on the claim in Count II is compelled by the testimony of Chief Locke, who testified that everything Officer Nazzoli did was in accordance with the policies of the City of Bella Villa Police Department. (Deposition of Chief Locke at 117-119). In particular, Chief Locke testified that tasing a misdemeanor suspect such as plaintiff while in handcuffs was in accord with the City's policies and practices. If the use of force employed by Officer Nazzoli was excessive, then Chief Locke's testimony indicates that the use of unreasonable and excessive force was the policy or practice of the City of Bella Villa Police Department.

In Count III of the complaint, plaintiff claims that the City failed to instruct, supervise, control or discipline Officer Nazzoli. To succeed on a § 1983 "failure to train" claim, plaintiff must show that: (1) the City's police training was inadequate; (2) the failure to train reflects a deliberate and conscious choice by the City; and (3) the alleged deficiency in training procedures actually caused plaintiff's injury. See Teasley v. Forler, 548 F.Supp.2d 694, 706 (E.D. Mo., 2008). Plaintiff must establish deliberate indifference on the part of the City, by proving that the City "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Noah v. Saint Louis Co., 2007 WL 2156301 at *4 (E.D. Mo., 2007)(quoting Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996).

Plaintiff has offered no evidence showing that the City of Bella Villa failed to train, supervise or control Officer Nazzoli. Officer Nazzoli testified that he was trained at the police academy on the proper use of force. A training seminar was presented to the Bella Villa Police Department on the use of Tasers. According to Chief Locke, this training included information about when the use of a Taser was appropriate. Officers were required to take a written examination, and Officer Nazzoli received a score of 100% on his test, according to Chief Locke. There is no evidence to support plaintiff's claim that this training was inadequate.

Likewise, plaintiff fails to raise an issue of material fact as to whether the City failed to supervise, discipline or control Officer Nazzoli. There is simply no evidence to show that the City failed to properly supervise, discipline or control Officer Nazzoli. During his tenure with the Bella Villa Police Department, Officer Nazzoli was not accused of excessive force outside of the incident at issue in this case and in <u>Scherrer v. Bella Villa</u>, 2009 WL 690186 (E.D. Mo. 2009), in which a jury found in Officer Nazzoli's favor. There is no pattern of misconduct by Officer Nazzoli, showing that the City's supervision, control of discipline was inadequate. Summary judgment will be granted on Count III of the complaint.

Plaintiff's final claim against the City is based on the theory of respondeat superior. Plaintiff acknowledges that this claim is precluded by <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808 (1985). Plaintiff argues, however, that there exists a good faith argument for modification of this rule, based on a dissenting opinion in <u>Tuttle</u>. This Court is bound by the holding in <u>Tuttle</u> that a municipality cannot be liable under §1983 based on a theory of respondeat superior. Therefore, summary judgment in favor of defendant will be granted on Count IV of the complaint.

For the foregoing reasons,

IT IS HEREBY ORDERED that defendants' motion for summary judgment [#28] is **granted** with respect to Counts III, IV and VII of the complaint.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment is **denied** with respect fo Counts I, II, V and VI of the complaint.

The Court will enter judgment consistent with this Order following disposition of plaintiff's remaining claims.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of August, 2010.